UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| KIMBERLY DEFRESE-REESE, ET AL. | CIVIL ACTION NO. 18-1134 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| HEALTHY MINDS, INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court are a Motion to Strike [Doc. No. 67] and a Motion for Summary Judgment [Doc. No. 50] filed by Plaintiffs Kimberly Defrese-Reese ("Defrese-Reese"), Tyanna Jones ("Jones"), and LeMatthew Wilson ("Wilson").

For the following reasons, Plaintiffs' Motion to Strike is GRANTED, and their Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiffs brought this collective action lawsuit on behalf of hourly employees of Defendants Healthy Minds, Inc. and Healthy Minds of Bastrop, LLC ("Healthy Minds, LLC"). Plaintiffs seek to recover overtime wages and other damages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), from these Defendants, as well as Defendant Angela Nichols ("Nichols").[1]

Defendants Healthy Minds, Inc., and Healthy Minds, LLC, are Louisiana entities which provide direct care for disabled persons in their homes.   Nichols was the Program Director/Owner of the entities.   [Doc. Nos. 50-1 & 50-2, Answers to Interrogatory No. 2; Doc. No. 50-3, Answer

---

[1]Nichols is now Angela Nichols Young, but the Court will refer to her as Nicholas to avoid confusion and for consistency.

to Interrogatory No. 1].

Defrese-Reese was employed as an "office manager," but was paid on an hourly basis. Jones and Wilson were employed as direct care workers and also paid on an hourly basis. Employees were paid on the 5th and the 20th of each month.   [Doc. Nos. 50-1 & 50-2, Answers to Interrogatory No. 5].   Opt-in Plaintiff, James Boykins ("Boykins") was employed as a "case worker," and he is listed on an employee roster provided by Defendants.   [Doc. No. 50-7]; [Doc. No. 50-11].[2]

On January 3, 2019, this Court conditionally certified a collective of "hourly employees who were employed by Defendants at any time since August 30, 2015."   [Doc. No. 28].   Twelve collective members filed timely consents to join as opt-in plaintiffs, but eleven later withdrew. There are (as of the date the Motion for Summary Judgment was filed) the three named Plaintiffs and one remaining opt-in, Boykins.

On February 6, 2020, Plaintiffs filed the instant Motion for Summary Judgment [Doc. No. 50].   Based on the undisputed facts in the record, Plaintiffs contend that they are entitled to summary judgment regarding the following issues:

(1) Defendants are a covered enterprise under the FLSA;

(2) Defendants are jointly and severally liable for Plaintiffs' damages;

(3) The applicable statute of limitations is 3 years;

(4) Plaintiffs are owed a total of $4,895.81 in unpaid wages;[3]   and

---

[2]In discovery responses, Defendants denied that Boykins was an employee, but he is listed on the employee roster, and Boykins produced a declaration attesting to his employment and work hours.   Defendants have failed to provide contrary evidence.

[3]Plaintiffs seek to recover $2,218.88 for Defrese-Reese, $1,082.71 for Wilson, $694.22 for Jones, and $900 for Boykins.

(5) Plaintiffs are owed an equal amount as liquidated damages.

The Clerk of Court issued a Notice of Motion Setting which set a deadline of February 27, 2020, for all Defendants to file an opposition memorandum.   [Doc. No. 53].   No opposition memorandum was filed.

However, the Court was aware that Defendants' counsel, Louis Scott, had recently had some health issues.[4]   Therefore, on March 11, 2020, the Court issued a minute entry [Doc. No. 54].   Because Mr. Scott's health issues had required his hospitalization and he remained unable to work at that time, the Court stated that it would "defer ruling on the Motion for Summary Judgment for a period of time to allow Mr. Scott to recover and/or to obtain assistance in his representation of Defendants."[5]   *Id.*.

A Court staff member then attempted to reach George Britton, the attorney with whom Mr. Scott shares office space, on two occasions, in order to determine if it was Mr. Scott's intent to return to work or to turn the case over to new counsel.     On both occasions messages were left with an assistant who agreed to relay them to Mr. Britton, but Mr. Britton did not return the calls.[6]

On April 7, 2020, the Court sent certified letters to the Defendants.   They were instructed that, no later than May 7, 2020, they had to notify the Court whether (1) Mr. Scott was going to continue his representation and would be filing an opposition memorandum, or (2) new

---

[4]Mr. Scott is a long-time member of the local bar, and it was common knowledge in the legal community of his health issues.

[5]Prior to the issuance of the minute entry, a Court staff member contacted opposing counsel to inform him of this development, and he agreed that it was appropriate to delay ruling in light of Mr. Scott's health issues.

[6]Mr. Scott is a solo practitioner, and Mr. Britton was never enrolled as counsel in this matter.   However, the Court did expect Mr. Britton would return the call as a courtesy.

3

counsel would be enrolling.   *See* [Doc. Nos. 55, 59, 64].   Nichols was given a third option of

representing herself, *pro se*.   The Court explained that entities must be represented by counsel.

Defendants were further informed that, if no notification was received, the Court would proceed

with ruling on the pending Motion for Summary Judgment without opposition.

On May 13, 2020, the Court received a letter [Doc. No. 63] from Nichols who stated that

she had spoken with Mr. Britton and that Mr. Scott "does plan on returning to work."   She stated

further that there was no time line for his return.   In response, the Court issued another minute

entry, stating as follows:

> While the Court is gratified to hear that Mr. Scott is recovering and intends to
> return to work, the Motion for Summary Judgment has now been pending for
> almost four months, and Mr. Scott himself has not filed anything with the Court,
> nor has another attorney filed on his behalf.   Therefore, Defendants must file an
> opposition, either through Mr. Scott or other counsel of their choosing, . . . to the
> Motion for Summary Judgment no later than June 15, 2020, or the Court will
> proceed with ruling.
>
> The Clerk of Court is directed to mail a copy of this minute entry to all Defendants
> at their last known addresses.

[Doc. No. 65].   The Court also reminded Nichols that she had "the option of proceeding *pro se*

and filing her own opposition," but noted that she had "not indicated that she wishes to do so as of

this time."   *Id.* at n.1.

On June 9, 2020, Nichols filed a memorandum in opposition to the Motion for Summary

Judgment [Doc. No. 66].   She contends that the "fifteen opt in plaintiffs" have failed to prove they

were employed by any of the Defendants.   *Id.*   She also contends that Plaintiffs have failed to

produce evidence that they are due payments for overtime.   She further asserts that Healthy

Minds, Inc., was dissolved in 2020 and should not be a defendant.   Finally, she asks the Court to

consider the special circumstances brought about by the COVID 19 pandemic and Mr. Scott's

illness.

In response, Plaintiffs filed the pending Motion to Strike [Doc. No. 67].

No party filed an opposition to the Motion to Strike.

The Court is now prepared to rule on the pending motions.

## II.     LAW AND ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.   *Id.*

 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).   "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."   *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).   Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*.   "The court need consider only the cited materials, but it may consider other materials in the

record." FED. R. CIV. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

If a party fails to oppose a motion for summary judgment, the moving party is not automatically entitled to judgment in its favor. *See John v. Louisiana Bd. of Trs. for State Colls. & Univs.*, 757 F.2d 698, 707–10 (5th Cir. 1985). Rather, the Court is duty-bound to apply the identified principles. However, under Local Rule 56.2, "[a]ll material facts set forth in the

statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Therefore, Plaintiffs' statement of material facts is deemed admitted.

### B. Motion to Strike

Prior to considering the Motion for Summary Judgment, the Court must consider Plaintiffs' Motion to Strike Nichols' opposition to the extent that she purports to offer arguments and evidence on behalf of the two Healthy Minds entities.

> [T]he well-settled rule of law [is] that a corporation cannot appear in federal court unless represented by a licensed attorney. *See, e.g., Rowland v. California Men's Colony*, 506 U.S. 194, 202, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) ("the lower courts have uniformly held that 28 U.S.C. § 1654 ... does not allow corporations, partnerships, or associations to appear in federal court otherwise than by licensed counsel"); *Southwest Express Co. v. ICC*, 670 F.2d 53, 55 (5th Cir.1982).

> Although 28 U.S.C. § 1654 authorizes individuals to appear in federal courts pro se, the statute is silent regarding corporations. The lack of authorization in § 1654 has been interpreted as barring corporations [and other business entities] from appearing in federal court without an attorney. *Rowland,* 506 U.S. at 202, 113 S.Ct. 716.

*Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004).   Accordingly, Plaintiffs' Motion to Strike is GRANTED, and Nichols' opposition memorandum will be considered only as to her defense, not as to the defense of Healthy Minds, Inc., or Healthy Minds, LLC.

### C. FLSA

The FLSA requires certain employers to pay minimum wages of $7.25 per hour.   29 U.S.C. § 206.   Additionally, the FLSA mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).   Under

the FLSA, "[a]ny employer who violates the provisions of section 6 or section 7 of this Act [i.e., minimum wage and overtime rules] shall be liable to the employee or employees affected." 29 U.S.C. § 216(b).

Plaintiffs move for summary judgment, contending that Defendants have no defenses to their claims that:   (1) the entities are a covered enterprise under the FLSA; (2) all Defendants are jointly and severally liable for Plaintiffs' unpaid wages and other damages;   (3) the applicable statute of limitations is 3 years; (4) Plaintiffs are owed a total of $4,895.81 in unpaid wages; and (5) Plaintiffs are owed an equal amount as liquidated damages.   The Court will consider each of these arguments and the evidence supporting them in turn.

### 1.   Defendants are a "Covered Enterprise" under the FLSA

First, Plaintiffs move for summary judgment that Healthy Minds, Inc., and Healthy Minds, LLC, are a "covered enterprise" under the FLSA.

The FLSA provisions apply (1) to an employer that has "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" ("individual coverage"), or (2) to an employer that has employees "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage").   *See* 29 U.S.C. § 206(a)(1) and 29 U.S.C. § 207(a)(1).   Plaintiffs argue that the Healthy Minds entities are subject to enterprise coverage, which requires a showing that the employer (1) "has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has at least $500,000 of "annual gross volume of sales made or business done."   *See* 29 U.S.C. § 203(s)(1)(A).   The "handling" language of the statute was added in 1974, and Congress

8

stated that its effect would expand FLSA coverage, so that every enterprise doing the requisite dollar volume of business would be covered by the FLSA. After this amendment was added, Congress stated that its effect would expand FLSA coverage so that every enterprise doing the requisite dollar volume of business would be covered by the FLSA. *See Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 502 (5th Cir. 1978) (quoting S. REPT. 93-690, 93d Cong., 2d Sess., p. 17 (1974)).

It is undisputed that each Heathy Minds entity has an annual gross volume of sales or business done in excess of $500,000.00.   [Doc. No. 1, Complaint, ¶¶ 12, 17; Doc. No. 7, Answer, ¶¶ 12, 17].   In its previous ruling denying Defendants' Motion for Summary Judgment, the Court indeed recognized that "there is no dispute that the entities meet the requisite volume of business[.]"   [Doc. No. 25, p. 6].   Therefore, the employees of these entities are protected by the FLSA as long as employees handled materials or goods that have moved in interstate commerce.

An enterprise satisfies the commerce test "if during the annual period which it uses in calculating its annual sales . . ., it regularly and recurrently has at least two or more employees engaged in" the statutory activities, including handling goods or materials that have been moved in or produced for commerce.   29 C.F.R. § 779.238.   The term "materials" is not defined in the FLSA, and there is no opinion by the United States Court of Appeals for the Fifth Circuit on this issue.   However, courts routinely cite the Eleventh Circuit case of *Polycarpe v. E & S Landscaping Serv., Inc.*, 616 F.3d 1217 (11th Cir. 2010).   In that case, the Eleventh Circuit explained:

> First, whether an item counts as "materials" depends on whether the item is serving as a material in context. As we just discussed, to count as "materials," an item must fall within that word's ordinary meaning within the FLSA handling-clause context: as tools or other articles necessary for doing or making something. Depending on

9

how they are used, china dinner plates that are produced out of state, for instance, could count as either "goods" or "materials." Where a catering business uses the china plates at a client's banquet, the plates count as part of the "materials" necessary for serving a catered meal. But, where a department store sells the same china plates as stand-alone items, the plates count as "goods" for that retailer.

Second, for an item to count as "materials" it must have a significant connection with the employer's commercial activity; the business may not just somehow internally and incidentally consume the item. This requirement is compelled because the statute covers not all "goods" and "materials," but only "goods" and "materials" that a company is engaged in "handling, selling, or otherwise working on." 29 U.S.C. § 203(s)(1)(A)(i). . .

All of these terms in context denote a connection to the employer's work: its commercial activity. "[S]elling" and "working on" clearly do; "handling" does as well. The ordinary meaning of "handling" in the business world to which the FLSA speaks is to "have or cause to pass through one's hands in commercial transactions" or "to trade in: engage in the buying, selling, or distributing of (a commodity)." *Webster's Third New Int'l Dictionary: Unabridged* 1027 (1993). *See also* 6 *Oxford English Dictionary* 465 (2d ed.1989) (defining "handle" as "[t]o have in hand or pass through one's hands in the way of business; to trade or deal in; to buy and sell."). . . . Returning to our example of china dinner plates that are produced out of state, for a caterer that uses the china plates while providing catering services, the plates count as "materials" because they have a significant connection to the business's commercial activity of catering.   But for an accounting firm that uses the same china plates as objects of decoration mounted on its lobby wall, the china plates cannot count as "materials" because the plates have no significant connection to the business's accounting work.

*Polycarpe*, 616 F.3d at 1226.   Thus, "for the purposes of the FLSA's handling clause, an item will count as 'materials' if it accords with the definition of 'materials'—tools or other articles necessary for doing or making something—in the context of its use and if the employer has employees 'handling, selling, or otherwise working on' the item for the employer's commercial (not just any) purposes." *Id.* at 1227.

Applying these principles another federal district court has found that it could infer from the Complaint that the alleged employer "employed, among other types of staff, office staff members who handled documentation of home healthcare referral patients, scheduled home

10

healthcare appointments, and performed data entry tasks . . . and that these office staff members used computers, computer software, and phones . . . as 'tools or other articles necessary for doing or making something' for the commercial purposes of Bethany's home health business operations." *Blundell v. Lassiter*, No. 3:17-CV-1990-L-BN, 2018 WL 6738046, at *10 (N.D. Tex. May 21, 2018).   Thus, for purposes of denying a motion to dismiss, the district court found such allegations, along with allegations that "these materials had previously been moved in or produced for commerce" sufficed to "plausibly bring Defendants within FLSA coverage under the handling clause."   *Id.* (internal quotation marks omitted).

In this case, Plaintiffs argue that Defendants cannot credibly deny that their employees meet that standard.   The Court agrees.   At the least, the phones, computers, and printers in Defendants' offices meet the definition of "materials" that have moved in interstate commerce and which are used in connection with the business of providing care for the disabled persons in Healthy Minds, Inc. and Healthy Minds, LLC's care.[7]   Defendants admitted in discovery responses that Nichols and Sarah Hollis, another employee, supervised or managed Plaintiffs. Additionally, as Defendants failed to contest the statement of undisputed material facts, such facts are deemed admitted, and Plaintiffs' Motion for Summary Judgment is GRANTED on their claim that Healthy Minds, Inc., and Healthy Minds, LLC are covered employers under the FLSA's enterprise test.[8]

---

[7]Plaintiffs make the alternative argument that "Defendants have tacitly acknowledged their business is interstate in reach" because they required Defrese-Reese to sign an "Employee Non-Compete Agreement" that barred her from setting up a competing business "within a 25-mile   radius."[Doc. No. 50-6] and that Bastrop is less than 25 miles from the Arkansas border.   The Court need not reach this alternative argument, but would note that all pleadings indicate that Healthy Minds provided services only in Louisiana, not Arkansas.   A potentially unenforceable non-competition agreement (which are disfavored under Louisiana law and only apply in parishes where business was actually conducted) would not change that fact.

[8]The Court acknowledges that the evidence provided on this issue by Plaintiffs is weak.   They have not

### 2.   Joint and Several Liability

Plaintiffs next move for summary judgment on their claim that Healthy Minds, Inc.,

Healthy Minds, LLC, and Nichols are jointly and severally liable for damages.

First, citing identical discovery responses, Plaintiffs contend that the two corporate

Defendants are commingled to the point that they are effectively one company. [Doc. Nos. 50-1,

50-2, 50-4 & 50-5].   In their own Motion for Summary Judgment, Defendants filed a Statement

of Uncontested Facts that "All three plaintiffs worked for Healthy Minds, Inc., and/or   Healthy

Minds  of  Bastrop,  LLC."   [Doc. No. 11-1].   Thus, Plaintiffs argue that Defendants

themselves make no distinction between the entities.   The Court agrees and again relies on

Defendants' failure to oppose the statement of material fact, thus admitting those facts.

Additionally, under the relevant statutory provisions and case law, Plaintiffs contend that

Nichols was also an "employer."   Under the FLSA, the term "'[e]mployer' includes any person

acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.

§ 203(d). "Person" includes individuals, partnerships, corporations, etc., as well as "any

organized group of persons." *Id.* at § 203(a).   Whether a person is an employer under the

FLSA is a question of law, although "subsidiary findings are of fact." *Beliz v. W.H. McLeod &*

*Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir. 1985).

The definition of "employer" under the FLSA is "expansive," extending liability to

---

provided an affidavit or declaration or deposition testimony. However, the FLSA is to be viewed expansively, and
Defendants have admitted the statement of undisputed facts.   Further, the idea that any agency keeping track of
disabled clients and the work schedules of the employees who care for them would NOT use a computer and the
other materials mentioned to further their business and that such materials would NOT have moved in interstate
commerce is almost indisputable.   Therefore, the Court finds that Plaintiffs have met their burden.

persons with "managerial responsibilities" and "substantial control of the terms and conditions of the [employee's] work." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984). Analyzing whether a person is an "employer" under the FLSA "must focus upon the totality of the circumstances, underscoring the economic realities of the [employee's] employment." *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983). The four factors of the "economic reality" test include whether an alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010) (citing *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Grim Hotel* Co., 747 F.2d at 972.

In this case, Nichols was identified in Defendants' discovery responses as the Program Director/Owner, and it was admitted that she determined the rates of pay for employees. [Doc. No. 50-4 & Doc. No. 50-5, Response to Request for Admission No. 5]. She also admittedly supervised employees. As she was an "owner" and responsible for the policies at issue, the Court finds that Nichols is also jointly and severally liable with the Healthy Minds entities for their FLSA violations.[9] To this extent, Plaintiffs' Motion for Summary is also GRANTED.

---

[9]Nichols asserts that Healthy Minds, Inc., was dissolved in 2020. The Court has already ruled that her opposition memorandum can only be offered in her own defense, but, to the extent that she is being held jointly and severally liable with the Healthy Minds entities, it is arguably a defense for her as well. However, the dissolution of this entity in 2020 does not absolve it or other Defendants have liability for their FLSA violations during the relevant time period. While it may result in a collections issue for Plaintiffs, it is not a defense for Nichols to liability.

13

### 3.   Applicable Statute of Limitations

Next, Plaintiffs move for summary judgment on their claim that the applicable statute of limitations for their claim is three years.

Under the FLSA, a two-year statute of limitations applies unless an employer's alleged violation is willful, in which case a three-year statute of limitations applies.   29 U.S.C. § 255(a). "Willful," means that an "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the FLSA.   *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see Singer v. City of Waco*, 324 F.3d 813, 821 (5th Cir. 2003).   "But, neither knowledge of the FLSA's potential applicability nor negligent or unreasonable conduct necessarily establishes willfulness."   *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015) (citing *McLaughlin*, 486 U.S. at 132-33) (other citations omitted).

> For example, an employer that "act[s] without a reasonable basis for believing that it was complying with the [FLSA]" is merely negligent, *McLaughlin*, 486 U.S. at 134–35, 108 S.Ct. 1677, as is an employer that, without prior notice of an alleged violation, fails to seek legal advice regarding its payment practices, *e.g., Mireles [v. Frio Foods*, 899 F.2d 1407, 1416 (5th Cir. 1990)].
>
> In contrast, willfulness occurs where the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute ...". *McLaughlin*, 486 U.S. at 133, 108 S.Ct. 1677. For example, employers act willfully when they know their pay structures violate the FLSA or ignore complaints brought to their attention. *See, e.g., Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.,* 579 F.3d 546, 553 & n. 24 (5th Cir.2009) (citing cases).

*Mohammadi*, 605 F. App'x at 332.   It is the plaintiff "who bears the burden of demonstrating willfulness."   *Id.* at 332.

Plaintiffs contend that they have met their burden, arguing as follows:

Here, the evidence shows at least that Healthy Minds disregarded the possibility that it might be violating the FLSA. Healthy Minds does not deny that it knew

14

hourly employees were entitled to overtime pay.   Rather, the company explains its FLSA violations this way:

> On rare occasion when any overtime was performed there were times when they were paid the same hourly rate but when it was discovered they were paid the overtime. It was never a policy but there may have been and oversite. [sic]

Healthy Minds Responses to Requests for Admission ¶ 7, Exhibits 4 & 5 to Plaintiffs' Motion.

The time and pay records produced by Healthy Minds and attached to Plaintiffs' Motion show at least 46 workweeks in which Healthy Minds paid a Named Plaintiff straight time for overtime work. They do not show a single instance of an employee earning time-and-a-half.   *See* Pay Stubs, Exhibits 8—10 to Plaintiffs' Motion. If, as Defendants claim, "when it was discovered [that employees worked overtime hours] they were paid the overtime," but it was never   once "discovered" despite 46 occurrences, the only reasonable conclusion is that Healthy Minds had a policy of willful ignorance. Because Healthy Minds casually ignored its obligations under the FLSA, its violations of the Act were willful and the applicable statute of limitations is three years.

[Doc. No. 52, pp. 10-11].

While such evidence is indeed sufficient to prove violations of the FLSA, it is not the type of evidence the Supreme Court or the Fifth Circuit has indicated will support a finding of willfulness or reckless disregard.   To this extent, Plaintiffs' Motion for Summary Judgment is DENIED as to the statute of limitations.   The Court will apply the standard two-year statute of limitations.   Therefore, Plaintiffs and the opt-in Plaintiff can recover unpaid wages only back to August 30, 2016.

### 4.  Plaintiffs' Unpaid Wages

The FLSA requires employers to pay each hourly employee "overtime" wages at a rate of one-and-one-half times the employee's regular rate of pay for every hour worked in excess of forty per week.   29 U.S.C. § 207. Here, the Healthy Minds entities produced

documentation showing (1) that each Named Plaintiff was an hourly employee; (2) the number

hours each Named Plaintiff worked; and (3) the amount of pay each Named Plaintiff received.

The documents show that each Named Plaintiff frequently worked more than forty hours per

week and that Healthy Minds consistently paid them only their base hourly rate, with no

overtime premium, for that work.   Records were not provided for Boykins, but he provided a

declaration supporting his claim for overtime wages.   In addition to supporting his claim for

overtime wages, Boykins supports the claims by all Plaintiffs that "[t]he usual practice at

Healthy Minds was to pay hourly employees their hourly rate for all hours worked, including

hours over 40 per workweek."   [Doc. No. 50-11, Boykins Declaration, ¶9].

     The employee has the burden of proof to show that he is entitled to the overtime

payments he seeks.   If an employer has met its own statutory obligation to keep an employee's

time records under the FLSA, the employee may easily discharge this burden by securing the

production of the records.   *Anderson v. Mount Clemens Pottery Co*., 328 U.S. 680, 687 (1946).

> If, however, the employer has not kept accurate records, an employee has met his
> or her requisite burden of proof if he proves that he has in fact performed work for
> which he was improperly compensated and if he produces sufficient evidence to
> show the amount and extent of that work as a matter of just and reasonable
> inference. The burden then shifts to the employer to come forward with evidence
> of the precise amount of work performed or with evidence to negative the
> reasonableness of the inference to be drawn from the employee's evidence. If the
> employer fails to produce such evidence, the court may then award damages to
> the employee even though the result may only be approximate.

*Id.* at 687-88.

     To the extent that Defendants have provided records, the Court may rely on those

records. Those records show that over a two-year period, Plaintiffs were improperly

16

compensated. [10]   Defrese-Reese was paid an hourly rate that varied from $11.00 to $16.75

during the two-year period preceding the filing of the Complaint.   *See* [Doc. No. 50-8].   She

worked 8.08 hours of overtime at the rate of $11.00, 107.82 hours of overtime at the rate of

$15.00, 72 hours of overtime at the rate of $16.00, and 85.36 hours of overtime at the rate of

$16.75.[11]   However, Defrese-Reese received only straight time compensation.   Thus,

multiplying the hours worked by the ½ time rates, Defrese-Reese is entitled to recover

$2,144.03.[12]

Jones was paid an hourly rate of $10.00 to $11.50 during the relevant time period.

However, all overtime hours were worked while she was paid at the rate of $11.50.   *See* [Doc.

No. 50-10].   She worked 120.73 hours of overtime.   *Id.*   However, Jones received only straight

time compensation.   *Id.* Thus, Jones is entitled to recover $694.20.[13]

Wilson was paid an hourly rate of $10 and received only straight time compensation on

---

[10]Defendants previously argued that Defrese-Reese was not subject to the overtime requirements because she was an "office manager."   Section 13(a)(1) of the FLSA exempts employees occupying "bona fide executive, administrative, or professional" positions from FLSA's overtime requirements.   29 U.S.C. § 213(a)(1).   "The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." *Id.*   The Code of Federal Regulations require that the employee was paid on a salary basis.   *See* 29 C.F.R. § 541.1(a); 29 C.F.R. § 541.2.   However, the evidence shows that Defrese-Reese was paid on an hourly basis, even if Defendants could otherwise meet their burden.

Defendants also accused Defrese-Reese of wrongdoing in their discovery responses, but have failed to present any evidence of such in opposition to the instant motion.

[11] With regard to the pay periods ending 1/7/2018 and 7/25/2018, Defrese-Reese has indicated in the chart accompanying her pay records that she is entitled to a lesser amount of overtime than indicated.   The Court accepts the lesser figures.   *Cf.* [Doc. No. 50-8, p.1, p. 57 & p. 70].

[12]Defrese-Reese is not entitled to recover amounts from the pay period ending 12/15/2015 or the pay period ending 2/15/2016.   Additionally, it appears that Plaintiffs rounded up on some of the figures when they should not have.   The Court finds that the amount stated is the corrected amount of overtime wages owed to Defrese-Reese.

[13]With regard to Defrese-Reese and Jones, the Court found very minor discrepancies in rounding up some numbers, resulting in a couple of cents difference in each award amount.

216.54 hours of overtime. *See* [Doc. No. 50-9].   Thus, Wilson is entitled to recover $1,082.71.

Opt-in Plaintiff Boykins did not have time records from Defendants, but he has filed a sworn declaration that, "in or around 2015 and 2016," he "worked for Healthy Minds, Inc., as a case worker."   [Doc. No. 50-11, Boykins Declaration, ¶ 3].   He states that he did not keep records of his time, but gives his "best recollection" that he worked an average of 45-50 hours per week for Healthy Minds.   *Id.* at   ¶¶ 4, 7—10].   He, thus, presents evidence that he did work for Defendants (also supported by their own employee roster/list) and that they did not produce accurate time records.   He further offers evidence that he appears to be due some unpaid wages under the FLSA.   Unfortunately, however, the Court cannot make a reasonable determination of what those hours were and what unpaid wages may be due to him.   He declares that he "worked for Healthy Minds for a little over a year starting in 2015."   *Id.* at ¶ 5.   The Court has ruled that Plaintiffs can only recover unpaid wages back to August 30, 2016.   Boykins' declaration clearly provides that he was not employed after 2016, but it does not provide any way for the Court to determine (1) if he was employed on or after August 30, 2016, and, if so, (2) for what period of time.

Plaintiffs' Motion for Summary Judgment on their unpaid wages is GRANTED IN PART and DENIED IN PART.   The Court finds that Defrese-Reese, Jones, and Wilson are entitled to unpaid wages, but only within the two-year statute of limitations in the amounts indicated.   The Court finds that Boykins has failed to provide sufficient evidence to support an award of unpaid wages in his favor.

### 5.  Liquidated Damages

When an employer is found to have violated the overtime payment requirements of the

FLSA, the employer "shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."   29 U.S.C. § 216.   Subject to the discretion of the Court, an employer may be relieved of his duty to pay liquidated damages only if the employer proves "that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act."   29 U.S.C. § 260.   "At one time, this liquidated damages assessment was mandatory[,]" but "the district court can now decline to award such damages (or reduce the amount) if the court concludes that the employer acted in 'good faith' and had 'reasonable grounds' to believe that its actions complied with the FLSA.   *Singer v. City of Waco, Tex.*, 324 F.3d 813, 822–23 (5th Cir. 2003) (citations omitted).   However, the burden of the good-faith defense is on the employer, and the Fifth Circuit has "held that an employer 'faces a substantial burden of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA.'" *Id.* at 823 (quoting *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998) (other internal quotation marks and citations omitted).

In this case, Defendants have not presented evidence to discharge their burden. Plaintiffs' Motion for Summary Judgment on their liquidated damages claim is GRANTED IN PART AND DENIED IN PART.   Liquidated damages are awarded to Defrese-Reese, Jones, and Wilson, but are denied as to Boykins.

## III.   CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Strike [Doc. No. 67] is GRANTED, and Nichols' Opposition Memorandum was considered only as to her defense, not as to

Defendants Healthy Minds, Inc., and Healthy Minds, LLC.   Plaintiffs' Motion for Summary

Judgment is GRANTED IN PART AND DENIED IN PART.   The motion is GRANTED to the

extent that Plaintiffs seek a determination that Healthy Minds, Inc., and Healthy Minds, LLC, are

covered enterprises under the FLSA and that Healthy Minds, Inc., Healthy Minds, LLC, and

Nichols are jointly and severally liable for damages under the FLSA.   The motion is DENIED to

the extent that Plaintiffs moved the Court to apply a three-year statute of limitations and award

damages over that period.   The motion is GRANTED IN PART AND DENIED IN PART as to

the unpaid wages and liquidated damages requested by Plaintiffs.   Boykins has failed to prove

that he is entitled to an award of unpaid wages during the relevant period, and the motion is

DENIED as to any award of unpaid wages and liquidated damages to him.   The motion is

GRANTED as to the remaining Plaintiffs to the extent that they seek unpaid wages and

liquidated damages, but their recovery is limited to the two-year period prior to commencement

of this lawsuit.   Judgment is rendered in favor of Plaintiffs Defrese-Reese, Jones, and Wilson

and against Defendants Healthy Minds, Inc., Healthy Minds, LLC, and Nichols, jointly and

severally, in the following amounts:

1. Defrese-Reese is awarded $2,144.03 in unpaid wages plus an equal amount of liquidated
   damages for a total award of $4,288.06;

2. Jones is awarded $694.20 in unpaid wages plus an equal amount in liquidated damages
   for a total award of $1,388.40;

3. Wilson is awarded $1,082.71 in unpaid wages plus an equal amount in liquidated
   damages for a total award of $2165.42.

MONROE, LOUISIANA, this 3rd day of August, 2020.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE